## CITY OF DUNCAN v. ABRAMS, Adm'x, et al.

No. 23136.   April 23, 1935.

Pierce, Follens & Rucker, Jones & Clift, and A. M. Covington, for plaintiff in error.

J. W. Marshall, for defendants in error.

BUSBY, J. On July 2, 1930, Maude Abrams, administratrix of the estate of William Oscar Abrams, deceased, as plaintiff, commenced an action in the district court of Stephens county against the Southwestern Light & Power Company, a foreign corporation, and the city of Duncan, a municipal corporation, as defendants, to recover damages for the death of William Oscar Abrams, which was alleged to have been directly and proximately caused by the negligence of the defendants.

The cause was tried to a jury, resulting in a verdict in favor of the plaintiff and against both of the defendants for the sum of $35,000. Judgment was entered on the verdict. Thereafter and within three days separate motions for a new trial were filed by each of the defendants based upon various asserted errors of law alleged to have occurred during the trial of the cause. The motion of the Southwestern Light & Power Company was subsequently withdrawn and a settlement made between that defendant and the plaintiff, whereby that defendant paid plaintiff the sum of $13,500.

On June 9, 1931, the motion for new trial filed by the city of Duncan was overruled, to which ruling and order the defendant excepted and gave notice of appeal to this court. This order was a final and appealable order.

Soon after the motion for a new trial was overruled the defendant city of Duncan ordered a record of the proceedings to be made up by L. W. Hardwick, the court reporter, who had taken the testimony at the trial. Before he could transcribe his shorthand notes the reporter became incapacitated on account of illness. He died in the latter part of July, 1931. An unsuccessful effort was then made to find some one who could transcribe the notes.

On the 7th day of October a petition for a new trial was filed by the city of Duncan on the grounds that it was impossible to make a case-made. On October 12, 1931, a hearing was had on the petition for new trial. The plaintiff appeared at the hearing for the purpose of resisting the petition. Evidence was introduced bearing upon the question of the possibility of making a case-made without a transcript of the testimony. Thereafter, and on October 16, 1931, the trial court entered its order overruling the petition for a new trial. The city of Duncan gave notice of its intention to appeal to this court. It also asked and was granted an extension of time in which to prepare and serve a case-made. Meanwhile the time for preparing and serving a case-made to perfect an appeal from the order overruling the motion for a new trial had been kept alive by extension orders.

On December 5, 1931, a petition in error with a case-made attached thereto was filed in this court by the defendant city, which appears herein as plaintiff in error. Maude Abrams, administratrix, and the Southwestern Light & Power Company, a corporation, are named as defendants in error. For the sake of convenience, we shall continue to refer to the parties in this opinion in the order of their appearance in the trial court.

In the petition in error the defendant city complains of both the order overruling the motion for a new trial and the order overruling the petition for a new trial.

Both of the orders complained of were entered less than six months prior to the time the appeal was lodged in this court.

As we understand the briefs, the parties to this appeal concede that both of the orders are appealable and that separate appeals could be maintained. Plaintiff, however, urges that both cannot be reviewed in one appeal when proper and timely objection is made.

The plaintiff has moved to dismiss the appeal on the theory (among others) that a duplicitous or double appeal has been attempted. The motion to dismiss on this and other grounds was previously overruled by order of this court. We are asked to reconsider our ruling at this time. In order to clarify the law we shall do so in so far as the motion relates to duplicitous appeals.

The plaintiff says in her brief:

"Our contention, briefly, is that this last action (referring to the petition to set aside the judgment) and the judgment thereon is in the nature of an independent action, although between the same parties and having to do with the same subject-matter, and if appealed from must be on a separate petition in error and a separate case-made, and that this not having been done, the appeal is duplicitous and should be dismissed."

The following cases are relied on as authority in support of the motion: Harper et al. v. Stumpff, 84 Okla. 187, 203 P. 194; Callahan v. Nida, 86 Okla. 279, 207 P. 966; First Nat. Bank of Guthrie, Trustee, v. Ackors et al. and White v. Adams, 109 Okla. 228, 235 P. 185; First National Bank of Ada v. Schulte et al., 119 Okla. 241, 249 P. 376; Harris v. Farrar, 121 Okla. 213, 247 P. 353; Downing v. Downing, 121 Okla. 273, 249 P. 732; Key, Adm'x, v. Missouri, K. & T. R. Co. et al., 135 Okla. 52, 274 P. 672.

The term "duplicitous appeal" refers to an appeal from two separate judgments, or from a judgment and an order, or from two independent orders, both of which are appealable. The appeal in this case is, therefore, duplicitous in a strict sense. However, not every duplicitous appeal is objectionable.

A review of Harper v. Stumpff and other authorities cited, supra, reveals that in this jurisdiction a duplicitous appeal has been regarded as objectionable when an attempt has been made to procure a review in one appeal of two or more separate judgments relating to two or more different actions concerning different subject-matters. This court has refused to treat as objectionable a duplicitous appeal embracing two or more appealable orders made in the same case or two or more appealable orders made in connection with the same case on successive attempts to set aside the same judgment.

Our attitude on this question has not been fully expressed in our previous opinions for the reason that in most instances it found expression only in memorandum court orders overruling motions to dismiss. However, in the recent case of Bradshaw et al. v. Sexton, 172 Okla. ___, 44 P. (2d) 80, in disposing of an objection on the ground of duplicity, where two separate and successive appealable orders had been made denying efforts to vacate the same judgment, we said:

"The rule of this court to dismiss for duplicity is not an absolute and unvariable rule; where the two judgments relate to the same matter and are not so foreign to each other that their combination in the same petition in error and in the briefs causes confusion, we see no reason why we should necessarily dismiss for duplicity."

The rule authorizing a dismissal of objectionable duplicitous appeals is one of practice. Its purpose is to promote and preserve an orderly appellate procedure. It should not be extended beyond the purpose of its origin in order that it may become, in the hands of an astute practitioner, a weapon of offense to defeat the ends of justice by preventing an appellate review on the merits in a case where orderly appellate procedure is not offended by the duplicitous character of the appeal.

In the case of German Nat. Bank of Beatrice v. Edwards, 63 Neb. 604, 88 N. W. 657, the Supreme Court of Nebraska had before it a problem almost identical with the one presented in the case at bar. In holding that an order denying a motion for a new trial and an order denying a petition for a new trial could properly be reviewed in a single proceeding in error, that court said:

"The petition in error assigns as error both the ruling on the motion for a new trial and that sustaining the demurrer to and denying the petition. The defendant in error objects that the latter ruling is a final order, reviewable by itself independently of the order overruling the motion for a new trial, and is therefore, in effect, a new action, and that for that reason complaint cannot be made of both orders in a single petition in error. We do not think this contention can be upheld. The motion and petition attack the same verdict upon grounds prescribed by the same section of

the Code. The matter alleged in the petition might have been, and presumably would have been, included in the motion, had knowledge of it come to the plaintiff in error within the time prescribed for the filing of the latter. It is because of the frequency of the occurrence of a like state of affairs that the statute permits the filing of the petition at a later date than is prescribed for the filing of the motion. But while the two proceedings are distinct in so far that each may be reviewed separately from the other, no good reason occurs to us why that course should be regarded as being exclusively permissible. **On the other hand, the method adopted in this case is to be commended as having a tendency to expedite the litigation and to save costs and expenses."** (Emphasis ours.)

To the same general effect, see Vinson et al. v. Los Angeles Pac. R. Co., 141 Cal. 151, 74 P. 757; Winter et al. v. McMillan, 87 Cal. 256, 22 A. S. R. 243, 25 P. 407; Sharon v. Sharon, 68 Cal. 326, 9 P. 187.

Even in North Dakota, where the rule against duplicitous appeals has been applied with considerable rigidity, it has been held that a judgment and an order refusing to vacate may be reviewed in the same appeal. See Fargo Silo Co. v. Pioneer Stock Co., 41 N. D. 345, 170 N. W. 626.

We therefore hold that an order overruling a motion for a new trial and an order denying a petition for a new trial on the grounds of impossibility to make a case-made, both of which orders are made in connection with the same case, can be reviewed in the same appeal, provided, of course, that the appeal is properly perfected from each of the orders in the manner and within the time provided by statute.

In order to avoid confusion, we deem it proper to state at this point that we are not holding that separate appeals could not properly have been taken from the two appealable orders.

The motion to dismiss is denied.

The various assignments of error presented by the defendant city of Duncan (plaintiff in error herein) have been grouped under five propositions. Our view of this case renders it unnecessary to consider but one of these. The defendant's first proposition is:

"Where the evidence and proceedings during the trial had been recorded in shorthand notes by the official court reporter and such record of the proceedings could not be transcribed because of the illness and death of the reporter, and the party against whom an adverse judgment has been rendered is without fault, it is error for the trial court to refuse to grant a new trial on proper application on the grounds of impossibility to make a case-made."

The proposition as stated does not incorporate all of the elements which must be considered in determining the merit of the contention as applied to this case. The correct and applicable rule was stated by this court in the recent case of Gibson et al. v. City of Chickasha, 171 Okla. 284, 43 P. (2d) 95, in paragraph 2 of the syllabus as follows:

"Where plaintiff in error, within one year after final judgment, makes application for new trial on the ground of impossibility of making case-made, makes proper showing that he has used reasonable diligence and good faith in attempting to appeal to this court, and is unable to perfect his appeal, through no fault of his own, but because the reporter's notes have been destroyed in a flood, and because of impossibility of making case-made without such notes, new trial should be granted by the trial court."

Thus in order to justify a new trial on the grounds of impossibility to make a case-made in a case where the reporter's notes cannot be transcribed, for some reason not the fault of the appellant, it must also appear that it is impossible to make such a case-made without a transcript of such notes. Jones v. Duncan, 168 Okla. 598, 35 P. (2d) 451; see, also, R. & R. Motor Co. v. Kings, Inc., 169 Okla. 231, 36 P. (2d) 900.

In the case at bar it was established at the hearing that a diligent effort had been made to procure some one who could read the shorthand notes of the deceased reporter; that no one could be found who could read them. Counsel for the defendant testified in substance that during the trial they made very few notes and that they were unable to remember in detail or in substance all of the testimony introduced or the various objections made by them to the introduction of testimony, although they could remember that a great many objections were made and considerable testimony was admitted over their objection. In this connection they point out that in their motion for new trial previously filed and overruled they complained of the admission of alleged incompetent testimony.

The attorney for the plaintiff, on the other hand, according to his testimony, had taken copious notes, which, together with his memory, enabled him to prepare in narrative form the substance of all of the testimony and proceedings at the trial. He stated that very few objections had been

made to testimony offered. On examination of his statement, attorneys for the defendant city were able to suggest some 75 or 80 alleged inaccuracies and omissions. They testified, however, that they were certain the record was still incomplete.

The trial of this case occurred in April, 1931. There were 23 witnesses used. The reporter died in July. Some time was used in attempting to find a person able to read the reporter's notes before it became apparent that a transcript of the testimony and objections thereto could not be obtained. Counsel for the defendant city are excusable for their inability to recall the events of the trial with sufficient certainty to prepare a case-made from memory. While the law requires that the appellant exhaust every reasonable means to prepare a case-made without a transcript of the reporter's notes, if same is not available (Jones v. Duncan, supra), no rule of law requires an acceptance of the version of the proceedings prepared by opposing counsel as either accurate or complete.

The trial judge in discussing the testimony introduced in connection with the petition for a new trial said in part:

**"There were some objections that the court does not recall at this time as to the admissibility of testimony, made by the Southwestern Light & Power Company and also by the city of Duncan."**

It is thus apparent that the trial judge was unable to determine that the narrative record was complete. No doubt he denied the petition for a new trial on the theory that the record was substantially complete and that there was no real merit in the objections which he could not recall. His natural conviction would be that his own rulings on questions of the admissibility of evidence were correct. It is possible that they were. But that is not the important point of inquiry. The question is: Is the record complete enough to show the evidence and the rulings that were made in connection with its introduction. Whether the decisions on questions of law made during the trial were right or wrong the defendant city was entitled to a review of those rulings by this court. If the city was unable, through no fault of its own, to make a record which would present the questions, a new trial should have been granted.

In the case of Cherry v. Brown, 79 Okla. 215, 192 P. 227, we said in paragraph 4 of the syllabus:

"It is neither slight, ordinary, nor gross negligence on the part of the complaining party or his counsel to rely upon the court reporter furnishing him or his counsel with a transcript of his stenographic notes of the evidence and proceedings, for the purpose of incorporating same in a case-made for appeal or proceeding in error, within the time allowed by law or by the court within which to make and serve a case-made"

—and in paragraph 5 of the syllabus:

"If the court reporter fails, refuses, or neglects to furnish a party a transcript of his stenographic notes of the evidence and proceedings. such party, being without fault in respect thereto, is presumptively entitled to a new trial under the ninth subdivision of section 5033, Rev. Laws 1910, authorizing the trial court to grant a new trial 'when, without fault of complaining party, it becomes impossible to make case-made.' "

In the body of the opinion, speaking through Mr. Justice Ramsey, we said:

"This court knows that it is now, and has been for years, a well-established custom and usage among lawyers to rely upon the court reporter to transcribe his notes of the evidence and proceedings for the purpose of incorporating the same in a case-made. * * * Upon the complaining parties showing these facts (inability to secure transcript of testimony and proceedings), nothing else appearing, he has made a case entitling him to a new trial. There may arise exceptions to this general rule. Thus where there were only a few witnesses, their testimony brief, or no substantial conflict in their testimony, or the evidence is practically all composed of exhibits and documents easily accessible to the parties, and the complaining party is warned in ample time in advance that the court reporter is unable to transcribe his notes, * * * the trial court in its discretion may, after reviewing all the circumstances, properly overrule the petition for a new trial on the ground herein discussed, **but it should appear clearly that the complaining party will not be denied a hearing in this court on a correct and truthful record of all the proceedings, including the evidence, before the trial court.** * * * Realizing the frailty of the human memory, whether it be that of the judge or counsel, the inability of opposing counsel to understand and remember the testimony of witnesses in like manner, and the amount of the trial judge's time frequently consumed in settling a dispute between counsel and parties, as to the testimony of witnesses, the Legislature of this state has made court reporters a part of the judicial machinery for the administration of justice. The reporting of cases is generally for the sole purpose of facilitating the accurate reproduction of trials in the nisi prius courts for review in this court."

After a careful review of the testimony on

the petition for a new trial, we are convinced that it does not "clearly appear" that the complaining party would, as the record now stands, be afforded a hearing in this court on a "correct and truthful record of all the proceedings" if we should undertake to review the proceedings on the trial which resulted in the money judgment in favor of the plaintiff. The testimony establishes that the city of Duncan is not at fault for its inability to present a correct and complete case-made.

While the decision of the trial court in denying a petition for rehearing involves a measure of discretion, that discretion must be exercised in accord with the established law as announced by this court.

Under the record in this case the showing was sufficient to establish defendant's right to a new trial, unless the same should have been denied upon the grounds of an improper method of procedure.

The plaintiff earnestly urges that the proceedings to obtain a new trial on the grounds of impossibility to make a case-made should in this case have been by motion filed during the term in which the judgment was rendered rather than by petition filed during the next succeeding term. Plaintiff says that the action of the trial court in denying the petition should be affirmed on the theory that the trial court was without jurisdiction to grant the relief prayed for on petition filed after term. The authority of the trial court to pass upon the merits of the questions presented by the petition for new trial was not challenged in that court by motion to strike. It is apparent from the record that the question of whether a new trial should be granted on the grounds of impossibility to make a case-made was considered and determined on its merits by the trial court. However, we shall consider the question of procedure now being urged in this court.

There are two regular terms of the district court of Stephens county, beginning on the first Monday of April and October, respectively. The time for convening each of the regular terms is fixed by statute. The time for termination or adjournment is not. Section 3832, O. S. 1931. Assuming (since the record does not reveal) that there was no adjournment of the April term sine die, it would end at the close of the last business day preceding the commencement of the October term. Boaz v. Martin et al., 101 Okla. 243, 225 P. 516. The October term in 1931 began on Monday, October 5th. The next preceding business day was Saturday, October 3rd.

The petition for new trial based upon the grounds of impossibility to make a case-made was filed on October 7, 1931, or two days after the October term commenced. The judgment and order overruling the motion for a new trial were both entered during the April term of court. Plaintiff's counsel say that the impossibility of making a case-made arose and was discovered during the same term, and that therefore the proceeding to obtain a new trial upon that ground should have been by motion filed within the term. This by virtue of section 400, O. S. 1931, which provides:

"The application for a new trial must be made at the term the verdict, report or decision is rendered, and, except for the cause of newly discovered evidence, material for the party applying, which he could not with reasonable diligence, have discovered and produced at the trial, or impossibility of making a case-made, shall be within three days after the verdict or decision was rendered, unless unavoidably prevented."

And section 402, O. S. 1931, which reads in part:

"Where the grounds for a new trial could not with reasonable diligence have been discovered before but are discovered after the term at which the verdict or decision was rendered or made or report of the referee approved, or where the impossibility of making a case-made, without fault of the complaining party, arose after said term, the application may be made by petition filed in the original case, as in other cases. * * *"

It is thus apparent that a petition for new trial on the grounds of impossibility to make a case-made may be filed at a subsequent term if such impossibility arose or was discovered after the term at which a verdict or decision sought to be reviewed was rendered.

In order to apply these statutory provisions to the case at bar, it is essential to review the pertinent facts bearing upon the impossibility to make a case-made with particular attention to the time of accruance and discovery. In connection with the facts, we must bear in mind that it is possible to make a case-made without a transcript of the reporter's notes. See Jones v. Duncan, supra, and R. & R. Motor Co. v. Kings, Inc., supra.

The impossibility to make a case-made in this case arose from the following contributing causes: (1) The sickness of the reporter prior to his death which made it im-

possible for him to transcribe his notes; (2) the death of the reporter; (3) the inability of the trial judge or counsel to find some one else who could transcribe the deceased reporter's notes; (4) the inability of the defendant with the assistance of plaintiff's counsel to prepare an accurate and complete transcript of the evidence and proceedings in narrative form.

The sickness of the reporter occurred and was known prior to his death in the latter part of July, 1931. His death was known to counsel within a short time after its occurrence.

After the death of the reporter an effort was made to find some one else who could transcribe the shorthand notes. Mr. Huff, a court reporter of Oklahoma county, assisted in this effort. The shorthand notes were placed in his hands. His affidavit certifying his inability to transcribe the notes or find any one else who could was, by agreement of the parties, treated as a deposition and introduced in evidence at the hearing on the petition for new trial. The affidavit was dated October 6, 1931. This was after the commencement of the October term of court. However, it appears that on the preceding Saturday, October 3, 1931, which was the last business day of the preceding or April term, Mr. Clift, attorney for the city of Duncan, was at the State Capitol in Oklahoma City attending to business in the State Industrial Commission. Judge Long, trial judge in the case, was in Oklahoma City on the same day. Mr. Clift, in response to a call from Judge Long, went to the courthouse, where he was informed by Mr. Huff that the deceased reporter's notes could not be transcribed. The exact time of day that this information reached Mr. Clift is not revealed in the record. Thus, with respect to the time of discovery of the first three contributing causes of impossibility to make a case-made, two were discovered well within the April term of the district court of Stephens county, while the third was discovered on the last day of and barely within the term.

There still remained the possibility that a case-made might be made by using an accurate narrative from the testimony and proceedings. Of course, counsel for the defendant city knew during all of the time that an effort was being made to procure a transcript of the deceased reporter's notes that they themselves could not prepare such a narrative. However, plaintiff's counsel had assured them by letter written shortly after the reporter's death that he could. He had also informed them some time in September that he had prepared such a narrative. He did not give them a copy of the purported narrative at that time. We do not think councel for the city displayed a lack of diligence, or conducted themselves in an unwarranted manner in failing to attempt a preparation of the narrative of testimony and proceedings or in making the discovery that such a narrative could not be prepared as long as there remained a reasonable probability that a transcript of the reporter's notes could be procured. This in view of the fact that their own memory of the proceedings was so vague that they could not determine with any degree of certainty that their adversary's version of the evidence and rulings thereon was correct.

Nor do we think that the facts would justify us in holding that the city attorney would be compelled to complete an effort to prepare such a narrative or determine the impossibility of preparing the same in the few remaining business hours of Saturday, October 3rd, after he discovered that a transcript of the deceased reporter's notes could not be obtained.

The record supports the view that the impossibility of making a case-made by using a narrative of the evidence was not completely apparent until plaintiff's counsel had submitted his proposed narrative to the defendant at the time of the hearing on the petition for new trial and defendant had made an effort to supplement the same. This was several days after the October term had begun.

There is a slight inconsistency in plaintiff's position in this case which should not pass entirely unnoticed. It is urged, first, that defendant could and did prepare a case-made as far as the narrative of the evidence was concerned; second, that defendant knew it could not prepare a case-made long before it actually did so. The purpose of section 402, supra, was to enable litigants who are unable to make a case-made for reasons arising or discovered after the term at which a judgment or decision was rendered to obtain a new trial by filing a petition seeking that relief. It was not intended as a means of defeating the very purpose of its enactment.

In view of the sequence of events demanding consideration in this case, as previously outlined herein, we hold that the impossibility of making a case-made arose in part and was discovered after term; that the defendant city could not with due diligence

have discovered the impossibility before the expiration of the term, and that the defendant was authorized to proceed by petition.

The judgment of the trial court is reversed and remanded, with directions to grant a new trial.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.