**CLEARY BROS. CONSTRUCTION CO., A Corporation, v. NORA PHELPS, a Widow.**

| | |
|---|---|
| 24 So. (2nd) 51 | June Term, 1945 |
| October 19, 1945 | Division B |
| Rehearing denied Dec. 11, 1945 | |

*McKay, Dixon & DeJarnette* and *Parker & Foster*, for appellant.

*Liddon & Fee* and *T. W. Conley, Jr.,* for appellee.

THOMAS, J.:

A suit was brought in Monroe County by appellee, a widow, to recover from appellant damages for the loss of her husband, and eventually the cause reached an issue and was tried, resulting in a verdict for $35,000.

No bill of exceptions is brought here, for reasons appearing in affidavits presented to the court at the time the motion for a new trial was argued. From these, executed by Mr. H.

Reid DeJarnette, Judge Raymond R. Lord, and Miss Ruth Thompson, the following situation is unfolded: Mr. DeJarnette, in behalf of his firm, conducted defendant's case both during settlement of the pleadings and the trial of the issues before the jury. As the time for the trial approached he associated Judge Lord and Mr. Allan B. Cleare, of Key West, to assist him. The Key West attorneys were requested to arrange for the services of a "court reporter," and they employed Miss Ruth Thompson, who took shorthand notes of the proceedings. The day after the verdict was rendered all attorneys for the defendant conferred in Key West in preparation for the presentation of a motion for new trial. It seemed imperative to have a transcription of the notes; so Miss Thompson was reached on the telephone and requested to furnish it immediately. She agreed to begin the task that very day. Three days later Mr. DeJarnette telephoned Judge Lord and urged him to speed the work. A week passed, and again Judge Lord was called and told that the record should be completed by the following day, that being the last day notice could be given of the hearing on the motion for new trial. Judge Lord gave the assurance that the transcript would be in the mail that afternoon, but on the following morning he advised Mr. DeJarnette that he had been informed by the stenographer that her notes had been lost. It appears from one of the affidavits that the stenographer was the secretary of William V. Albury, an attorney in Key West, who on the morning the trial began appeared as counsel assisting attorneys for the plaintiff.

The first question posed by appellant challenges the propriety of the order denying the motion for new trial where (1) the stenographic notes of the proceedings of the trial were lost, (2) the loss was occasioned "through no fault of the defendant or its counsel," (3) it was impossible to secure a record of such proceedings, and (4) the verdict was excessive. There can be no doubt of the first premise. The second is also correct so far as the direct connection of defendant and its counsel was with the loss is concerned. The third cannot be accepted as entirely accurate because we are not

aware from the record of any effort to settle the bill of exceptions, even though stenographic notes of the trial proceedings were unavailable. See Chapter 59, Florida Statutes, 1941, and F.S.A. The quality of the fourth, which forms the basis of the only other question we shall consider and discuss, will be deferred for the moment.

The kernel of appellant's contentions, exclusive of the objection to the amount of the verdict, is that, to quote its brief, it was "deprived of the opportunity to present to this court a record of the trial proceedings in the lower court so that this court may determine whether on the entire record there has been a miscarriage of justice." To support the position appellant cites several cases relevant to the general proposition that loss of notes of the proceedings will warrant a new trial. The first of these is Scharff et al. v. Holschbach et al., 220 Mo. App. 1139, 296 S.W. 469. There the court held the destruction of notes of voluminous testimony, making impossible the construction of the record without them, justification for a new trial. In that case attempt had been made to compile the record, but this was found unfeasible, and even counsel for the victors in the suits had stated that he could not undertake to give an accurate account of the testimony he had offered. It is significant that the court referred to the voluminousness of the record. Among cases mentioned in this decision was Larson et al. v. Shockley et al., 231 S.W. 1030, where the court of Appeals of Missouri had refused to reverse and remand in an appeal from an order denying the motion for new trial made on the ground of the loss of the stenographer's notes. The reason for the action was that appellants had not been diligent, had not tried to prepare a bill of exceptions without the notes.

In Woods et al. v. Bottmos et al., 206 S.W. 410, cited also in Scharff v. Holschbach, supra, it is shown in the opinion that the stenographer had taken down the proceedings and that his notes were "preserved in the courthouse," which burned before the time expired to complete the transcript. The facts reflected in Todd v. Security Ins. Co., 206 S.W. 412, also referred to in Scharff v. Holschbach, supra, were strik-

ingly similar. It was the duty of the court stenographer to preserve the proceedings which he had taken in shorthand, but they were totally destroyed when the courthouse where they were deposited burned. Every effort had been made on the part of the defendant to secure a bill of exceptions, but the evidence was so lengthy that the record could not be made from memory. The court observed that the destruction was a misfortune for which the defendant was in no wise to blame. In each of these cases it was ordered that a new trial be granted.

The next case relied upon by appellant is Reynolds v. Romano, 96 Vt. 222, 118 Atl. 810, where a new trial was awarded, it having been demonstrated that a transcript was not obtainable because the "stenographic reporter, an official of the court," had removed from the jurisdiction of the court, was not under control of the court, and was not disposed to recognize any obligation to furnish the transcript.

We pass to Coan v. Plaza Equity Elevator Co., 60 N.D. 51, 232 N.W. 298, where a new trial was ordered because the "official court reporter" died before his notes were transcribed, and inasmuch as he used a "different" system, a transcription could not be procured.

The Supreme Court of Indiana, Indianapolis Life Ins. Co. v. Lundquist, 222 Ind. 359, 53 N.E. (2nd) 338, instructed the lower court to grant a reasonable time to submit a bill of exceptions where the notes of the official court reporter, "an arm of the court," had disappeared.

The Civil Court of Appeals of Texas in Fire Assn. of Philadelphia v. McNerney, 54 S.W. 1053, decided, where a charge given at the trial was lost by fire, together with many other papers, that "a party should not be deprived of his rights on appeal by loss of the record due to an accident *not chargeable to him.*" (Italics furnished by us.)

In Shafer v. King, 82 Colo. 258, 259 Pac. 1042, absence of a complete transcript due to the incapacity of the "trial court reporter" was held sufficient reason to affirm an order setting aside the judgment.

The Supreme Court of Oklahoma, Harris et al. v. First National Bank of Pryor Creek, 140 Okla. 269, 282 Pac. 1097, ordered a new trial when it was made to appear that the "court reporter" could not, because of physical inability, furnish a transcript.

The "court reporter," in Gibson et al. v. City of Chickasha, 171 Okla. 284, 43 Pac. (2nd) 95, advised the attorneys that he was unable "to prepare a case-made" because his notes had been lost in a flood, and a new trial was ordered because the loss was not attributable to counsel. This view was influenced largely by a statute providing that "when without fault of complaining party it becomes impossible to make case-made" there is ground for new trial. The same court in City of Duncan v. Abrams et al., 171 Okla. 619, 43 Pac. (2nd) 720, held, however, that a party could not avail himself of the statute unless it appeared that it was impossible to make the case made without the transcript. Here the "reporter" died before translating his notes.

In Hodge & Mattheis v. Vermont Stone Products Corporation, 113 Vt. 491, 37 Atl. (2nd) 183, the question before the court was not one of loss or failure to transcribe notes, but failure of the trial judge to sign the bill of exceptions within the required time due to his illness, a contingency held not imputable to petitioner.

And finally appellant refers us to Hitt et al. v. Carr et al., 77 Ind. App. 488, 130 N.E. 1, where the Supreme Court of Indiana invoked the familiar doctrine that "whenever by fraud, accident, mistake, or otherwise, an unfair advantage had been obtained in a proceeding at law, and it is against conscience to make use of such advantage, a court of equity will restrain the party from making use of the same . . . " Evidently the advantage sprang from a failure on the part of a circuit court clerk.

We have digested, albeit briefly, all cases cited by appellant except James v. French, 5 Pa. Co. Ct. 270, which we cannot locate.

Many circumstances are prominent in these decisions, such as diligence exercised by counsel; impracticability of

preparing a bill of exceptions without the reporter's notes; voluminosity of the file; impossibility because of loss by flood or fire, incapacity of the reporter or his failure to make the transcription. But they are not present in the instant case. For instance, in the matter of diligence of counsel, it cannot be disputed that they were quite attentive in their earnest efforts to procure the transcript by making repeated demands on the stenographer. It is true that they were not apprised of the loss of her notes until the last moment, but it is not established that any attempt whatever was made to prepare the bill of exceptions without these notes. Too, it is, to say the least, doubtful that the record could have been voluminous, as the trial required but one day. Here there is no evidence of destruction of the record by fire, flood, or any other unavoidable means.

The paramount condition which seems to us common to the decisions mentioned, dealing with situations where the loss was traceable to the fault of some person, and the present case is the identity of the person responsible. We have purposely placed in quotation marks the titles of the ones who took the shorthand notes, and it will be seen that they are variously described as "official court reporter," "arm of the court," "court reporter," "court stenographer," and so on. Miss Thompson was not a court reporter, not an official, not an arm of the court. The arrangement with her, or between counsel for the appellant and her, was purely private employment. So far as we are advised the plaintiff (appellee), her attorneys, or the court had nothing whatever to do with her selection to take and transcribe notes of the proceedings.

When we refer to the statutes we find a clear statement of the law referring to official court reporters, their appointment and duties. It is required that they be efficient and experienced, Section 29.01, Florida Statutes, 1941, and F.S.A.; and they shall "report the testimony and proceedings with objections made, the rulings of the court, the exceptions taken, and oral or written charges of the court in the trial of any civil case in said court *upon the demand or request of the attorney for either party.*" Section 29.02, Ind. (Italics sup-

plied.) If there is failure to perform these duties they may be penalized under Section 925.01, Florida Statutes, 1941, and F.S.A.

The first of these sections is introduced with the provision: "There shall be, whenever the presiding judge or judges shall deem it necessary in any judicial Circuit in this state, an official court reporter of testimony and proceedings in trials at law in the circuits." Now, it may be that it has not been considered necessary to have an official court reporter in the circuit where this case was tried, but, if not, the provisions of Section 29.07 could have been invoked. It provides that where such an officer has not been appointed or is disqualified or unable to serve "it shall be within the discretion of the judge to appoint a special reporter in any case, civil or criminal, *upon demand* of any of the parties therefor . . . ." (Italics supplied.)

There is nought in the record to show that the official court reporter was neglectful or even that one existed. The statute plainly requires a strict accountability of the court reporter, as an official, for the proper performance of his duties, and had there been one, his presence could have been compelled, as it was clearly his duty to be available to report the case. If there was none, or if the reporter could not act for reasons which would excuse him, counsel could have applied to the court for a special court reporter.

From a practical standpoint there might not be any advantage in such a course, the appointment of a special reporter, over the one pursued here, private employment of one, but in the predicament in which appellant finds itself there is a vast difference. Had the statute been followed, the person selected and appointed to take and transcribe the testimony would have immediately assumed an official status, would have become an "arm of the court," would have been directly responsible as such for the proper performance of his duties. This thought is borne out by one of the very cases cited by appellant, Indianapolis Life Ins. Co. v. Lundquist, supra, where it was written:

"Official court reporters are an arm of the court, charged

with the duty of preserving a record of the evidence, and transcribing and certifying the record for use as a bill of exceptions, and it has long been the practice to rely upon the availability of such record. Where the sufficiency of the evidence is in question, this record is as important as the record kept and certified by the clerk. A failure to make this record available is *a failure of the court which entitles the appellant to equitable relief."* (Italics supplied.)

Miss Thompson was simply an employee engaged by counsel for appellant. The difference in such status and one created by appointment under the quoted statute is this: Appellant has not been deprived of its right to appeal by the short-coming or carelessness of anyone having any official status or responsibility, but by an employee of its own selection not bound by oath, or by any obligation save to the employer. Of course the predicament is the same as if she had been appointed by the court, but the principle, announced in appellant's last cited case, is vastly different. The appellee would not be allowed to profit from improper conduct of a court official, but certainly misfortune arising from the loss of the notes by one engaged by appellant's counsel should not be visited on appellee.

It could be strongly argued, the question of settlement without benefit of transcript aside, that the losing of notes by the official court reporter was in effect an act of the court for which appellant should not suffer. We are unable to sympathize with appellant's contention that the carelessness of the employee of one party could be charged to the opponent, or, to state it otherwise in agreement with the announcement in Hitt et al. v. Carr et al., supra, that this fault amounted to an unconscionable advantage over appellant which should render appellee's judgment unjust.

It is charged that the verdict is excessive as compensation for the loss of a husband 41 years of age, father of four children, who was earning $87.50 weekly at the time of his death and had earned approximately $35 each week before the war.

Counsel has industriously examined and cited to us nearly

a score of cases showing the amounts of verdicts for deaths by wrongful acts approved by this court. With admirable candor he remarks that they establish no absolute rule but do serve as a yardstick in gauging the just awards in such cases.

We question the wisdom of reversing the case or reducing the judgment upon the basis of amounts sanctioned in other · cases on facts peculiar to them, especially in view of the absence here of the testimony introduced in this case. Even were we to rely upon the statements in the record proper of the deceased's age and earning capacity at the time of his death and consult the mortality tables to take into consideration the various elements of damage which we have heretofore recognized, we could not conclude that the amount awarded was "grossly excessive," as appellant insists.

We have not been uninfluenced in arriving at our conclusions by the facts that the circuit judge who presided held the conviction that a "fair and impartial trial" was had denied the motion for a new trial, and stamped his approval on the verdict by entering judgment for the amount by the jury.

Affirmed.

CHAPMAN, C.J., BROWN and SEBRING, JJ., concur.

THOMAS, J.:

Some features of the petition for rehearing seem to warrant elaboration of our original opinion.

The appellant insists that we overlooked the fact that it is customary "in the Eleventh Judicial Circuit to accept as the official Court reporter, any reporter produced by either side, provided no objection is made by the Court or opposing counsel." This, assuming the premise to be sound, was not overlooked, for there was no showing in the record of such custom, though an attempt is now made to introduce it by affidavits attached to the petition for rehearing. Nor was reversal urged on that theory.

Three questions were argued in the brief. The third dealt with the propriety of a ruling sustaining a demurrer to a plea. We thought it required no comment. The second involved the

justness of the amount of the verdict upon which we remarked briefly. Pertinent parts of the first question follow:

"Where the court reporter has lost the stenographic notes of the proceedings of the trial . . . and where said loss was through no fault of the defendant or its counsel, and where it is impossible to obtain a record of the proceedings . . . should the court grant a motion for new trial?"

The argument of the last question was introduced with reference to the affidavits which we digested in the original opinion. Then were cited fourteen cases, all of which we mentioned, all of which we examined except James v. French, 5 Pa. Co. Ct. 270, a decision not available. Our perusal of these opinions and applicable statutes led us to the conclusion that the circuit judge could not be said to have erred when he denied the motion for new trial and entered judgment.

Heretofore we have referred to the motion for new trial without giving its contents in detail. It seems now fitting to do so. The trial had been held 15 December 1944, and the motion filed 2 January 1945. It consisted of eleven grounds, five challenging the instructions to the jury, two, the arguments of opposing counsel; one, the amount of the verdict; one, the failure of the jury to "consume sufficient time in the consideration of their verdict." The remaining two stated the verdict to have been contrary to the law and the evidence. It was 2 May 1945, four months later, that there was filed a "motion in connection with [the] motion for new trial," bearing the first allusion to the mislaid stenographic notes, although from these affidavits it appears that the stenographer had reported the loss the 26th or 27th of December, even before the original motion for new trial was filed.

It might be seriously questioned, in view of the ruling in Walker Fertilizer Company v. Cole, 144 Fla. 37, 197 So. 777, whether this question of loss of the notes was ever properly entertainable by the court as a ground for new trial inasmuch as it was new matter attempted to be introduced long after expiration of the time for filing a motion for a new trial; however, we decided the controversy on the question we have

quoted, which was argued in the briefs by counsel for both parties litigant.

We did not, as suggested in the petition for rehearing, criticize in the opinion the employment of private stenographers to report the proceedings at trials. We see now no objection to such a course. We know of no requirement that the proceedings at a trial be taken by a regular or special court reporter or, so far as that is concerned, that they be taken at all. We can think of no reason why anyone in a private capacity may not take in shorthand such proceedings or why his transcription may not be used in making a record for appeal, depending on the confidence the trial judge has in the efficiency of the stenographer and the accuracy of the transcription. The question here presented is quite another matter. It does not deal with the propriety of such procedure, but with a situation where the notes taken by one so chosen become mislaid. We simply held that in such eventuality the loss was not imputable to the opposing party because he had no part in the employment, or the loss; also that mere establishment of the loss would not suffice as a ground for new trial inasmuch as the cause could not be traced to a court official.

A litigant faced with the difficulty of making up the record without advantage of stenographic notes might forcefully argue that his plight was due to the negligence or carelessness of a court official, but his position is entirely different when his predicament is attributable to the carelessness of someone with no official standing who has been selected by him or his counsel.

After all, the presumption is that the trial court ruled correctly. He said in his order that he had "heard all the testimony . . . and fully charged the Jury according to law"; that the "Motion for New Trial . . . [had] been fully orally argued . . . by counsel for both sides"; that they had exhaustively briefed [the] case"; that the "briefs [had] been read and studied by the Court"; that the "Court [had] made additional study of applicable law"; that he felt "the parties [had] had a fair and impartial trial"; that he believed "to grant a new

trial would invade plaintiffs right to a trial by jury of her cause." He then recited the report to him of the accidental, inadvertent, and permanent loss of the notes which he thought could not be charged "to either party or either attorney in said case."

It seemed to us at the time we prepared the original opinion and it seems to us now that it would be unjust to place upon the successful litigant and her counsel the burden and inconvenience of a second trial because of the loss of the notes by one with whose selection they had no part, with whom they had no relation and who herself had no official standing. Moreover, the very judge who tried the case and who was thoroughly familiar with it, as well as the subsequent loss of notes, entered the judgment notwithstanding. The presumption is that his action was correct, and this presumption certainly cannot be overcome by merely showing the circumstance that a transcribed record of the trial is not available and the assumption that, if available, error would appear.

It is said in the petition for rehearing that in referring to Chapter 59, Florida Statutes, 1941, and F.S.A. and stating that no effort had been made to settle the bill of exceptions we overlooked our Rule 11, Section 3, abolishing bills of exceptions. We were not called upon to decide in this case the effect of the rule upon the statute, and the statement was only made apropos the question whether appellant had been diligent in making up a record despite the disappearance of the notes.

The first sentence of the rule is: "For appellate purposes bills of exception and the formal authentication thereof by the trial judge *as now required* are hereby abolished." The language immediately following clearly shows its purpose, namely, to prevent duplication of work and to effect a saving to litigants. It provides that "when any proceedings . . . have been stenographically reported, *within the time for filing directions by appellant, the court reporter* shall certify a copy of his transcribed notes to the clerk . . . The . . . clerk shall not be required to verify *nor shall he make a*

*charge* for any stenographic copy furnished and certified by a *court reporter* when physically incorporated in the transcript." We have supplied the italics.

Obviously the purpose of this rule is to place the reporter's certified transcript directly in the record without additional cost in the form of fees to the Clerk.

What we have written about this section of the rule is merely introductory to the point directly involved in this case. What follows, taken from the other sections of the rule, bears directly on the point in controversy. It is provided that the testimony included in the record "may be in question and answer or narrative form or both" and when in narrative or abstract form, the party so directing shall prepare and file with his directions a condensed statement in narrative or abstract form of such testimony." It will be noted that in both sections there is reference to "directions." In the following sections procedure is outlined for presenting and considering objections to narratives filed with the "directions" and for stipulations as to the part of the record to be transmitted to the appellate court.

This question immediately presents itself: "Does the rule deal with cases where no notes have been taken?" If it does, there is no showing here of an effort to file a narrative with the directions. If it does not, and we resort to Chapter 59 for information of the manner of presenting proceedings at the trial (bill of exceptions) where there are no notes, we find, as we said in the original opinion, that nothing was done to comply with it.

We have said we knew of no requirement that stenographic notes of a trial be taken. If they are not, and the appellate court is to be apprised of these proceedings, there must be some attempt to bring such record here. The appellant made no such effort.

We reach now the statement in the petition that in the original opinion we criticized counsel for the selection of a "non-official Court reporter." No such criticism was intended, and upon scrutiny of the opinion in the light of the petition we can find none. Again we say we know of no irregularity

even, in such a course, but we reiterate that where it is followed and the employee loses the notes the misfortune cannot be visited on an adversary. See Morin v. Claflin, 100 Me. 271, 61 A. 782.

It is then represented that we "overlooked the fact that in truth and fact, the Court reporter was a full time employee of counsel for the plaintiff and that it was while she was employed by plaintiff's counsel that the notes disappeared." It is correct that the stenographer was the employee of one of counsel for the plaintiff and that this relationship existed when her notes were lost. If we resort to appellant's affidavit we find, however, that when she was employed by appellant, or its counsel, the attorney for whom she worked was not connected with the case. The statement from one of the affidavits follows: " . . . at the time arrangements were made to obtain the services of the court reporter, *the plaintiff* [appellee] *was not represented by local counsel* in Key West, Florida, [place of the trial] and the said court stenographer was, and is, employed as a secretary by William V. Albury, Esquire, an attorney in Key West; that *on the morning the case was called for trial,* Mr. Albury appeared as counsel for the plaintiff and, *for the first time* deponent was aware of the fact that Mr. Albury had been retained by the plaintiff; that upon information and belief, Mr. Albury was retained on the night of December 14, 1944." (Italics furnished.) To clarify this statement we repeat that the trial was held 15 December 1944.

Not only was there no criticism of counsel for appellant, but also there was no reflection upon either of them. Their good standing at this court is recognized. The fact that one of them called his associate in Key West to arrange for a stenographer and that such request was complied with seems to us quite regular. The fact that they were deprived of the transcript by some untoward event reflects no discredit on any of them. We reach by every avenue we have traveled the same conclusion—that the loss is to be suffered by appellant, not by appellee.

Petition denied.

CHAPMAN, C. J., TERRELL, BUFORD, ADAMS and SEBRING, JJ., concur.

BROWN, J. dissents.

BROWN, J., dissenting:

I think a rehearing should be granted in view of the allegations in the petition, and attached affidavits. I am also inclined to think that our Rule 11 abolishes bills of exceptions entirely and that Chapter 59 F.S. is inapplicable. Furthermore, upon re-examining the record I am inclined to think the trial court erred in sustaining demurrers to defendant's 7th plea (pp. 8 and 9 of transcript) and as amended (pp. 10 and 11), and also again amended (pp. 12-14). I am also inclined to the view that the verdict was excessive, but in the absence of the testimony it is probable that we cannot so hold.