Robert Wesley FINLEY, Plaintiff in Error,

v.

CONCHO CONSTRUCTION COMPANY, Inc.,
a corporation, Defendant in Error.

Nos. 40289, 40337.

Supreme Court of Oklahoma.

Dec. 17, 1963.

Ram Morrison, Oklahoma City, for plaintiff in error.

A. E. Pearson (Deceased) Milton R. Moon, Oklahoma City, for defendant in error.

PER CURIAM.

Robert Wesley Finley (plaintiff below) appeals in No. 40289 from a judgment rendered against him for $5038.70 and vacation of a deed on the cross petition of Concho Construction Company, Inc. (defendant below). In No. 40337 Robert Wesley Finley appeals from an order in the same case sustaining a demurrer to his petition for new trial. The appeals are consolidated for purposes of disposition by this opinion. The parties will be referred to as they appeared in the lower court.

In 1950 plaintiff and Glenn Hess and William Hess (brothers) bought 55 acres of land in Oklahoma County for about $16,500 as an investment, whereby plaintiff acquired one-half of the title and the Hess brothers became the owners of the other half. The land had been used for sand pit operations and in order to make it suitable and valuable for subdivision purposes it was necessary that the land, or a part thereof, be leveled, graded and filled. The defendant corporation was owned by the Hess family and at least a part of its business was operations of this character. At the time of the purchase it was orally agreed between plaintiff and the Hess brothers that during slack or idle periods the defendant's equipment would be utilized on the property and that the expense thereof would be paid out of the money from the first land sales. Under this arrangement the defendant carried on these operations at intermittent times from the purchase of the land to and including 1958.

In 1958 a purchaser was found for 26⅓ acres for $77,400 and there arose for the first time the proposition of the cost of defendant's operations in making the land acceptable to developers of subdivisions. There was also taxes and some other minor expense that was paid by defendant. Defendant states that from an examination of all of its records by all interested parties, and after giving plaintiff his proportionate credit for all proper deductions, it was agreed plaintiff's one-half of the expense was $8050. The sale was also complicated by federal income tax liens against plaintiff for more than $50,000. It is admitted that plaintiff by letter dated December 27, 1958, represented to the District Director of Internal Revenue that plaintiff's interest in the property was subject to grading and leveling costs of $8000, and that in consenting to the sale the government, in January 1959, released this amount for this expense but that plaintiff did not pay the money to defendant.

Thereafter plaintiff disputed the correctness of defendant's charges for work and

although several portions of the land were sold by plaintiff and the Hess brothers no agreement was reached concerning plaintiff's indebtedness to defendant. In the fall of 1959 there remained 15 acres to be sold. This portion required considerable grading, leveling and filling and plaintiff's interest was subject to a federal income tax lien in the approximate sum of $6300. In January, 1960, a transaction took place between plaintiff and defendant. The versions or explanations of the parties concerning this transaction are completely irreconcilable. Plaintiff's version is that on or about January 29, 1960, he delivered a quit claim deed to defendant conveying to defendant the 15 acres subject to the income tax liens, for which he was to receive a release of defendant's claim against him and that both instruments were to be placed in escrow under an agreement (copy of which he delivered to defendant) providing for satisfaction of the income tax liens from sale of the property, that he picked up the papers, but later discovered defendant had kept the deed. Plaintiff states he then conveyed and recorded a deed to his sister in order to protect his interest in the land. Defendant's version is that the only agreement was that plaintiff conveyed his interest in the tax encumbered land to it in return for a release of its claim against plaintiff.

Plaintiff then sued, alleging his version of the last transaction, and praying for cancellation of the deed and for actual and exemplary damages. Defendant filed answer and cross petition and tendered the property back to plaintiff and prayed judgment for $8050 owing for the grading and leveling of the land. Plaintiff then filed a general denial and a dismissal of his petition and at a later date filed a second amended answer to the cross petition. Under the issues as eventually made up the defendant tendered conveyance of the 15 acres to plaintiff and prayed judgment against plaintiff for $8050 and plaintiff on his part relied on the release and in the alternative prayed for an accounting and

for such damages, "either actual or exemplary, as the court may determine from the evidence." The pleadings as a whole set forth all of the above described facts and circumstances.

After trial to the court the plaintiff, with leave of court, filed his second amended answer and the court referred the matter to a referee for hearing and report on the issues of fact. After a full and complete hearing the referee found and concluded that under the controversial circumstances surrounding the exchange of the deed of January 29, 1960, and the release of defendant's claim against plaintiff, the deed should be canceled and set aside, and further that after adjustment of defendant's charges for use and operation of its equipment and allowance to plaintiff of his expense, there was due to defendant from plaintiff the sum of $4837.70.

The trial court upon consideration of all the evidence and the referee's report rendered judgment canceling the deed and rendered judgment against the plaintiff for the sum of $5038.70. Plaintiff has appealed from this judgment in No. 40289.

Plaintiff's alleged grounds for reversal are that the trial court should have dismissed defendant's cross petition and rendered judgment for plaintiff for his costs; that assuming defendant was entitled to an accounting, still on the facts reflected by the record the court erred in failing to give plaintiff judgment; and that there is no competent or believable evidence to support the judgment. As we interpret plaintiff's argument these propositions are based generally upon the contention that the judgment is contrary to the evidence or at least the believable evidence.

As shown above the plaintiff's initial action was to quiet title and defendant by cross petition consented to return the property, but asked for payment of its account. Defendant was not, as plaintiff appears to believe, asking for damages because plaintiff had clouded title to the property. Furthermore it was in plaintiff's second amended answer that plaintiff asked for an account-

ing and this is what the trial court accorded the plaintiff. There were several tentative deals for sale of the 15 acres, but none of them were consummated because of necessity of improving the physical condition of the property, the disagreement over the amount owed defendant, and the federal tax liens.

Plaintiff's initial contention was that under the original oral agreement defendant was to charge only the "cost" of leveling and grading and was to make no profit on the operation. In an effort to resolve this question the records of defendant were examined by the plaintiff's auditor and the 24 original invoices for these services were enumerated and the time cards (Exhibit "M") were examined to determine the number of hours of operation. It was on the basis of independent evidence of "cost" of operation of the various types of equipment that defendant's account was reduced to the amount for which the judgment was rendered. After being introduced in evidence the time cards (Exhibit "M"), with the exception of six of the cards, disappeared or were lost and plaintiff questions the veracity of Exhibit "M" and of the invoices as true original records. These were matters for determination of the referee and trial court.

■ This was an action of equitable cognizance and in Buck v. Caldwell, Okl., 340 P.2d 485, we said:

"In a case of purely equitable cognizance, this court on appeal will review and weigh the evidence, but will not reverse the judgment unless same is clearly against the weight of the evidence."

■ We cannot say that the judgment rendered after the accounting was clearly against the weight of the evidence.

■ In Clark v. Addison, Okl., 311 P. 2d 256, this court stated:

"When court of equity obtains jurisdiction of a controversy for any purpose, it retains jurisdiction for purpose of administering complete relief, and to this end may determine purely legal rights which otherwise would be beyond its authority.

"The right to an accounting is one of equitable jurisdiction and contemplates a full and complete investigation of the mutual acts of the parties and the striking of a balance and rendition of judgment in favor of the party entitled thereto."

We now turn to plaintiff's appeal in No. 40337. On September 20, 1962, the plaintiff filed a petition for new trial. This was in the term of court following that in which the judgment was rendered and plaintiff's motion for new trial was denied. The petition for new trial alleged that plaintiff's Exhibit "M" (the above described time cards) were vital to plaintiff's appeal to this court, and that said Exhibit was missing and had not been included in the case made, and that it was impossible to make a complete case made, and was not the fault of the plaintiff. The defendant filed a demurrer to this petition and the court sustained the demurrer. Plaintiff has appealed from that order.

Plaintiff was relying as a ground for new trial on 12 O.S.1961 § 651, subd. 9, "When, without fault of complaining party, it becomes impossible to make case made," and was using the procedure authorized in 12 O.S.1961 § 655, which provides in part as follows:

"Where the grounds for a new trial could not with reasonable diligence have been discovered before, but are discovered after the term at which the verdict or decision was rendered or made or report of the referee approved, or where the impossibility of making a case-made, without fault of the complaining party, arose after said term, the application may be made by petition filed in the original case, as in other cases, not later than the second term after such discovery or occurrence; * * *."

■ The petition for new trial was filed in the original cause and the trial court was

authorized to take judicial notice of the proceedings and records of the cause in determining whether said petition was demurrable. James v. Unknown Trustees, 203 Okl. 312, 220 P.2d 831, 833, 20 A.L.R.2d 1077. See also Corliss v. Davidson & Case Lumber Co., 183 Okl. 618, 84 P.2d 7.

The record reflects that the trial court rendered judgment for defendant on the issues in the action on February 28, 1962, and that plaintiff filed a motion for new trial on March 9, 1962. Attached to the motion for new trial is the affidavit of the attorney for plaintiff reciting that he had knowledge on February 7, 1962, that said Exhibit "M" was missing or misplaced and directing attention to the importance of such exhibit. Plaintiff's motion for new trial was denied on April 6, 1962. All of these events took place in the term of court prior to that in which the petition for new trial was filed. It therefore clearly appears that plaintiff discovered that the exhibit was missing or lost and the impossibility of making a case made arose at a prior term of court and at a time when they were available for inclusion in plaintiff's motion as a cause for new trial.

In City of Duncan v. Abrams, 171 Okl. 619, 43 P.2d 720, this court found that the requirements of Sec. 655, supra, had been met and granted a new trial. We there held that under the statute such petition for new trial on the grounds of impossibility to make a case made may be filed where such impossibility arises after the term in which the judgment or decision was rendered, or where the cause of such impossibility could not with reasonable diligence have been discovered before the expiration of said term.

Under the circumstances in the present case the petition for new trial was insufficient because the alleged ground arose and was discovered during the term in which the judgment was rendered.

The judgment of the trial court on appeal in No. 40289 is affirmed and the order of the trial court appealed in No. 40337 is affirmed.

In accord with defendant's request herein, judgment is here rendered against Jerline Dick Finley, surety on plaintiff's supersedeas bond, to be entered and enforced by the trial court, as if there rendered.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.